Case number 18-584, Cassandra M. Menoken, Esquire, Appellate v. Janet Dhillon. Ms. Menoken for the Appellate, Mr. Walker for the Appellate. Good morning, everyone. My name is Cassandra Menoken. Excuse my voice, I'm losing it at the moment. My name is Cassandra Menoken. I'm the plaintiff's appellant in this case. It's a fairly complicated case, and it's an employment case. It's complicated in large part because it's against the EEOC. And EEOC is essentially the administrative court of last resort when it comes to adjudicating claims filed by federal employees against their agencies. The amended complaint asserts claims under Title VII in the Rehabilitation Act. The claims emanate from a decision the EEOC made about 20 years ago to create what I've characterized as an abusive link between my EEOC employment and my Title VII protected activity against the Office of Personnel Management. There came a point when the link became untenable. It took about, well, it was untenable for a long time. It took about 10 years for me to speak up about it. And once I did, the link became inextricably intertwined with rights protected by the Rehabilitation Act. The case is on appeal because the district court dismissed the action at the pleading stage. I am still struggling to understand the court's reasoning and whether the ruling involved Rule 56, summary judgment, or not. I settled on not because the last page of the first opinion says that the complaint is dismissed for failure to state a claim. So I didn't focus on Rule 56. Well, the order also makes clear that you had an opportunity to amend your complaint. That wouldn't be the case if the court were dismissing the case with prejudice on the summary judgment stage. That's true. Only the Title VII claim was dismissed without prejudice. But the Rehabilitation Act claim was dismissed with prejudice. And there was no way that I could figure out to amend the complaint to separate out the hostile activity that violated the Rehabilitation Act. The district court seemed pretty convinced that there was no way to add any facts or do anything that could save the Rehabilitation Act claim. I made the decision not to amend it, just the Title VII claim, because I'd be back on appeal maybe a couple of years later dealing with the Rehabilitation Act issues. And there's really no way to separate the hostile work environment claim under Title VII from the Rehabilitation Act claim. And it seemed more efficient to bring both claims here on appeal, because I maintained that the complaint is sufficient, alleges sufficient facts to state a plausible hostile work environment, retaliatory hostile work environment claim under Title VII. But especially if you factor into the equation the activity, the hostile activity that also violated the Rehabilitation Act. So I'm analyzing it and presenting this appeal under the understanding that the action was dismissed under 12B6. All right. I think it would be helpful for you to focus, hone in on where you think the district court made an error of law. That was the next point. There's no way to read the court's decision without appreciating that the district court did not draw inferences from the factual assertions in the amended complaint. There were no inferences drawn in favor of the claim. All of the inferences were drawn in favor of EEOC. And that's the focus I have made in my brief, but as I was preparing for this argument, I realized that the district court's error was really more fundamental than the inferences that it drew. If you look at the background section in the first decision, the facts are drawn as much from EEOC's brief and cases involving OPM as they're drawn from the amended complaint. I didn't count. I should have counted. But it seems to me that the proper approach to analyze the complaint under 12B6 is to focus on the allegations of the complaint. You'll see citations to paragraphs in the complaint, but then there are huge gaps in the narrative where the district court seems to fill the gap with something that comes from a motion to dismiss or something that comes from a decision that the court issued in an OPM case. And that's where I think the judge went off the rails, frankly, because when you look at the background that is presented in the decision, it creates a narrative that is kind of off-center from the narrative that's laid out in the complaint. So I really think what I'm urging this court to do, because there were errors in the factual errors in the court's background section in any event, but the approach is to look at the complaint. Can I ask you in that regard, you say that you asked for accommodations. In addition to the six-month leave, you had asked for other things like reassignment. So when and where in the record did you first request reassignment? In January of 2012. Does the record show that? Yes. The complaint shows that. Those paragraphs that describe the efforts I made, the interaction with the chief operating officer, the district court seemed not to find any relevance or significance to that at all. Well, the district court seemed to rely on this confirmation of request for reasonable accommodation at JA 68. My first question is, is that something you drafted, or is that something that they drafted after discussions with you? That's an interesting question, because I was looking at that last night. I did fill out a form, but I looked at that form and it doesn't make sense, because it's dated September 11th, and it makes reference to a previously submitted September 25th letter. Well, sometimes I think EEO personnel fill out these reforms to document a request they receive. But I just wasn't sure if this was a form you had filled out, or whether maybe this is something they filled out after some discussion. As I stand here today, when I looked at this last night, the form made no sense. I know in every other document in the record where you see a reference to my issues with, you know, ongoing litigation, it's in the context of pending OPM appeals. That talks about, that form talks about discrimination cases. And that's not usually how I even characterize that issue. My issue, and in the September 25th letter that's incorporated by reference in that form, makes it very clear that what made my job harder than it ever needed to be was being required to work alongside individuals who were handling my OPM appeals. They were adjudicating the OPM appeals. So I would be in a meeting on some policy issue, having a debate, a disagreement, and the person sitting across the table from me is responsible for adjudicating my OPM appeals. It was impossible to go on like that. I did go on like that for about 10 years, but then I just couldn't anymore. Now, you argue and you raise an interference claim and argue about the delay between, I guess, September and November of 2011 when they then made the offer to you, or 20, I'm sorry, 2012, when they made the, what they call, I guess, a settlement offer. Do you? Okay. Two points. I'm trying to understand. What was the delay you suffered and how did it prejudice you? Or explain to me in more detail exactly what your interference, the harm from your interference claim is. Okay. The interference claim, none of the claims, as the complaint is laid out, puts every fact into a box. At the end of the complaint where I state the causes of action, I say I incorporate all the facts as appropriate or as relevant or whatever, because there are so many facts that are implicated in different boxes. One of the things I understood you to allege, because I don't want to have time to go through everything in your complaint right now. We've all read it. The September, your complaint about delay that was occasioned, you put in a reasonable accommodation request, and your argument, as I understand it, is it was delayed while they were trying to work out this so-called settlement thing where they would give you your leave as long as you waived liability claims against them. And my understanding was your interference claim was that the delay in processing your reasonable accommodation. Am I wrong about that? No, you're not wrong. There was a delay. At the time, I didn't know the reason for the delay. That's fine. But my question is, so how were you injured by that delay? Well, I mean, that particular fact is relevant to the part of the narrative that brings the chief operating officer back into the picture. She's the one who stopped HR from processing what I call the formal request for accommodation. I had already talked to her months earlier about the same thing. She was not forthcoming in providing any kind of accommodation, reassignments. Clearly, I was asking for my- My question to you, though, is not to go through all this history again, but simply to tell me how you were- because it looked like the delay would have been between September and November. There was a delay. That's true. And how is that prejudicial to you? What's always prejudicial when you need an accommodation and you don't get it, and you're wondering why, what's going on? I had already spent several months with the chief operating officer trying to work something out. And the delay was just something that was admitted in the administrative record, that the reason for the delay was that the chief operating officer wanted to work something out. We weren't settling anything. It was a reasonable accommodation request, and she wanted to treat it like it was a claim to be settled. She wanted me to give up something in order to get the accommodation, and that's where things really broke down. Okay. Thank you. We'll hear from the other side now. I'm sorry, I did reserve some time. We'll give you some time for rebuttal. Good morning, and may it please the Court. Johnny Walker on behalf of the chair of the Equal Employment Opportunity Commission. Judge Wilkins, you asked Ms. Minokin to focus in on what were the errors of law in the district court's opinion. We don't believe that she has identified any, either in her appellate briefs or in argument here today. In fact, particularly with respect to the reasonable accommodation claim and her contention that she, that the EEOC failed to accommodate her, she forfeited those arguments by failing to rebut the government's contentions in its motions to dismiss. It's also worth noting that at that point in the proceedings, Ms. Minokin was not pro se. She was represented by counsel.  She has argued consistently that the district court should not have relied on the request for reasonable accommodation form exclusively. It should have recognized that she had made other requests for accommodation as well. And so, and that goes, it's not that she hasn't contested it. That's argument goes directly to the district court's holding that she hadn't made a reasonable accommodation request and that she wasn't a qualified individual because in the district court's view she wanted indeterminate leave. Everything centers, which she has definitely argued again and again, about the district court's reliance on this document that I don't think is even referenced in the complaint. Well, Your Honor is correct. She has asserted that she requested accommodations other than indefinite leave. Does your client deny that she, I mean, your own e-mails that you attached to this motion to dismiss evidence that she was asking for, looking into transfers as well. So you don't deny that she was asking for more than just a six-month leave? We do, Your Honor. She clarified in her, it's not in her declaration, but she clarified in her motion to reconsider in the district court below that she would have processing and reassignment as part of the grievance process that she administered, that she had achieved. The JA-128-129, which were your documents attached to your motion to dismiss, talk about looking for GS-15 positions. And her complaint specifically says she asked for other types of accommodations. It doesn't indicate that she raised that during the reasonable accommodation process. No, no, I want to go back to, I'm sorry, I'm not sure. The district court on a motion to dismiss started relying on extra complaint evidence that you had attached to your motion to dismiss, and the district court seemed to understand her as only asking for six months of leave or until her claims were processed. And now we're asking for other forms of accommodation. That's how I read the district court decision. Do you read, and I read your arguments as turning on her not being a qualified individual and the request for accommodation not being reasonable because it sought indeterminate leave. Yes. Am I correct in that? Okay. That is her position, and that's supported by the record. And if she, well, that's, first of all, we're on a motion to dismiss here. And second, so is your client disputing that she never asked for other accommodations? Here are the facts that are reflected in the record. Is your client disputing that she asked for other forms, including transfer? We don't dispute that she suggested both a transfer or reassignment and that her claims be processed by another department as part of the grievance process with Ms. Withers before she filed the reasonable accommodation. After she sought the reasonable accommodation, she did not request anything other than the indefinite leave until her claims were processed. But then why does the e-mail that you all attached, JA-128, 129, in January 2013, talk about looking for GS-15 positions? That's what Ms. Walton, Ms. Walton suggests looking for GS-15 positions. And Ms. Minokin responds that, she says, your e-mail today confirms my sense that perhaps we are not on the same page. While I have no problem discussing a reassignment, I think it's important for me to note that I do not see that as a priority. My accommodation request, the accommodation request that followed the administrative grievance process in which she discussed the possibility of a reassignment, the accommodation request, she says, was intended to convey my urgent need to recover from a debilitating trauma and ensure that I'm not traumatized again. That was the context for Dr. Hufford's recommendation. In September, the EEOC formally arranged a block of extended leave to enable me to address the cumulative effects of trying for more than 10 years to meet the expected demands of excellence while working in an environment where I'm constantly reminded. And what she says is, I don't see. So Ms. Walton then says, the GS-15 position, can you identify an office? And she says, unfortunately, the GS-15 position in the Washington field office is not vacant. So who asked to look for a GS-15 position in the Washington field office? It may be that she, it may be something that was brought up during the conversation with Ms. Walton. I think Ms. Walton was probably aware that that had been a topic. May have brought that up with Ms. Walton. But, I mean, the accommodation request that she submitted requests nothing other than indefinite leave. Who wrote that? I believe that she did. It says I. Where is the evidence show that she wrote it as opposed to? No, but it's quite common for EEO people to fill out these forms on behalf of people who file complaints. I mean, from the basis, I mean, she alleges that she submitted an accommodation on or around September 11th in her complaint. That's in paragraph 92 of the amended complaint. Right. That request is dated September 11th, and it refers to I. But this document clearly was not filled out. This is not the September 11th communication. Because it references a September 25th letter from Dr. Huffer. And I don't know exactly the timing of how that worked out. So this clearly is not the email referenced in the complaint. That may be true. So on what basis was this before the district court on a motion to dismiss? Because it was incorporated by her. I mean, she mentioned that she submitted a reasonable accommodation request. On September 11th. And that document. On September 11th. I'll also note that we moved in on. I'm sorry. Let me just. Hang on. Where does the complaint reference this document? And maybe that will tell me when this thing was actually put through. In paragraph 92 of the amended complaint, it says, on or about September 11th, 2012, plaintiff emailed EEOC's disability program manager requesting an appointment to discuss plaintiff's need for a reasonable accommodation. Right. And that's not this document. If it's not this document, that certainly documents the conversation. And I don't. Well, we don't know if she documented it or who documented it. This is not. I'm sorry. I just want to be clear. I understand the rule that you can sometimes consider documents incorporated and referenced in a complaint. But this is not an email. And this is not a document that was created on September 11th. Can we agree on that? That's possible. I'm sorry. I'm sorry. It references a previously submitted letter on September 25th. So can we agree, which would have been impossible to do on September 11th, so can we agree that this was not a September 25th, this was written after September 25th? It would appear to document the conversation on September 11th. It can't document a conversation on September 11th when it refers to a document from September 25th. Can we agree on that? If it follows September 11th,  I would hope you understand. But this is not an email, and this is not something that Ms. Minokin sent on September 11th that's referenced in the complaint. Apparently not. I would like to note, Your Honor, I would like to get this in that we did move in the alternative for summary judgment. We submitted a statement of undisputed material facts in which we ---- But the district court didn't grant summary judgment. It didn't grant summary judgment, but we did move for summary judgment. We submitted a statement of undisputed material facts attaching this document, characterizing this as Ms. Minokin's reasonable accommodation request, and she did not dispute this. Would you agree that this is a disputed fact, whether this was based on the complaint? I mean, I get that you say that, but she very much disputes that this was all she ever requested and this was the entire universe. Would you agree that's a disputed fact? No. I mean, we did say that this was a reasonable accommodation request. She did not respond to our statement of undisputed material facts with a statement of disputed facts. This is despite the fact that she was represented by counsel at the time. Fine, but the district court didn't grant summary judgment, so I don't see why we would hold that against her here now. But the court can affirm on that basis because we did move for summary judgment. I would also note, as I say, she did clarify in her motion to reconsider that the reassignment and the alternative processing were requested as part of the administrative grievance process with Ms. Withers. The ---- what we know about the request, what we have said in our statement of undisputed material facts, which were not contested, is that her request asked only for indefinite leave. The letter, certainly, from Dr. Huffer that she submitted and that was submitted with our brief sought only indefinite leave. And we know from the e-mail exchange she had with the disability program manager that she rejected any reassignment. She said that is not a priority. And if she is not ---- Not a priority. But she also ---- Not a priority is not the same thing as a rejection. But she also said that she could not work under any position with the dark cloud of her appeals hanging over her head. And if the ---- And whether the inference there is whether she couldn't work in this office, well, that seems to be a problem. That's just an inference question, right, whether she meant that or she couldn't work anywhere else. Well, she said it in ---- It's not the same process. She said it in the process of rejecting the course of discussion of a reassignment. She said she did not want to discuss the reassignment. She wanted a decision on her request for indefinite leave  And it's the agency that she asked and issued a decision on her request for indefinite leave and denied it. And then another part of your argument is that six months is just categorically unreasonable. That's not precisely our argument. Our argument is that, I mean, she requested six months for the amount of time that her appeals remained pending, whichever was longer. Right. But at the time she ---- At the time, I mean, do you agree that a six-month part of that would be a reasonable accommodation? It's the ---- Or longer part that's your concern? It may be. The issue is that by ---- It may be. Six months may be, depending on certain circumstances. Certainly, we have also demonstrated that a employer is not required to ---- No, no, I'm just ---- So you agree that, I mean, these are always a fact-specific ---- Sure. But so you're not asking for a categorical rule that at least the six-month part of this request was unreasonable? No, no, Your Honor. The decision that we were asking the Court to make is a direct follow-on from the decision the Court made in Minter. In Minter, the person seeking an accommodation said that they were unable to work for an indefinite period of time and had been out of work for three months up until that time. And based on that, this Court determined that they had not shown themselves to be a qualified individual. Similarly, with respect to Ms. Minokin, she had been out of work for five months at the time that her reasonable accommodation request was denied and had also claimed to be totally unable to work for an indefinite period of time, as long as those appeals remained pending. We know that that eventually ended up being three years. We also know that she requested ---- The other aspect of that is the leave she requested was paid leave. And we do know from EEOC guidance that an employer is not required to modify its paid leave policy. I guess I wasn't clear. So do you think the paid leave for six months part of the request is categorically unreasonable? If that would require the employer to modify its paid leave policies, it would be unreasonable. Would that in this case ---- would offering her paid leave for six months have been categorically an unreasonable accommodation? Yes. It's almost ---- Right. I think the EEOC went above and beyond. So they can't, right? Oh, certainly. Oh, certainly. And the EEOC was trying to reach a resolution here. So it sounds like the EEOC could have given her six months paid leave. But it's not legally obligated to, I think, Your Honor, is the point. Well, the question is that they can do it, whether deciding something's a reasonable accommodation, if they're willing to do it as long as she waives all her rights, whether it suddenly becomes, as you've asked for in a motion to dismiss, unreasonable as a matter of law when she's not willing to waive her rights. That's the rule you want us to adopt. I mean, if an agency is willing to go above and beyond its legal obligations, I don't think that changes its legal obligations to whatever the agency is willing to do. But the point about the unreasonableness of the indefinite paid leave, and this is indefinite paid leave. It's not just six months. It's at least six months, but indefinite. That's alternative to the fact that because Ms. Minogin had been out of work for five months and claimed both in her reasonable accommodation request and in her letter from Dr. Huffer that she was unable to perform work in any capacity for an indefinite period of time, that renders her not a qualified individual. So that's a separate basis. Thank you, Barry. Thank you very much. All right. Ms. Minogin, I'll give you two minutes. Two minutes. Excuse me. Your Honor, on the grievance, the grievance discussions, number one, the grievance is not a claim or a complaint. There are no entitlements to a grievance. It's just something that gets you a meeting with a superior to change or alter your work. The grievance discussions were over in August of 2012 because in April of 2012, the Chief brought out paid leave, not me. She offered me paid leave for four months in April of 2012. I accepted it because I was desperate. She never got back to me. She was going to implement it. I waited three months. I waited until August. Heard nothing. So the grievance discussions were over. I sent an email saying the grievance settlement or resolution is over as of now, as of August. In September, I invoked the formal process. And it was held up, like I said, and several months later, the Chief Operating Officer What did you ask for in that formal process? I asked for, I sent an email, not that document. I sent an email in September to the Disability Program Manager asking to set up a meeting or appointment to talk about the fact that I was working in an environment that was untenable and detrimental to my health because EEOC would not put into place a neutral process or at least send me somewhere else so I don't have to work and debate the people who are processing it. It was, I had already done it for 10 years. It was like enough, you know. So all the things that I had asked for from Claudia, the Chief Operating Officer, I was still interested in when I invoked the formal process. I thought the formal process was a more structured way to lay the groundwork for any claim that I needed to file. So this notion that the grievance means anything, it means nothing. It was over. Indefinite leave. EEOC was adjudicating the OPM appeals. They had full control over how long it would take. And certainly the Chief Operating Officer could arrange to do it sooner. Okay. Thank you very much. I think we've got your arguments. Thank you. The case is submitted.
judges: Millett, Wilkins, Rao